WILLIAM HEYWOOD *v.* EZRA BROOKS, PR., & CHAPIN C. BROOKS,
TR.

In the process of foreign attachment the trustee will not be charged for the income of a farm conveyed to him by the principal debtor and his wife, even if the conveyance was fraudulent and void as to creditors.

Where such conveyance was from the parents to the child, upon the contract of the son, secured by a mortgage back to maintain the parents during life, and it appeared that they labored for the son upon the farm so conveyed, it was *held* that the law would not presume that such labor was to be paid for, without proof that such was the understanding of the parties.

Nor could the trustee be charged in any way for the personal services or earnings of the wife.

Upon the trial by the jury of the issue between the plaintiff and the trustee, the opinions of the latter, in his disclosure, as to the value of the parent's services, are not evidence; neither are his statements that the farm was set off to the wife by the probate court, or that certain chattels were under mortgage.

Taxation of trustee's costs considered.

FOREIGN attachment. The principal defendant was defaulted. The plaintiff elected to try the liability of the trustee by jury, and a trial was commenced.

Dec. 10, 1853, Eliza Brooks, wife of the defendant, in her own right, and the defendant, conveyed to the trustee, who is their son, a farm in Lancaster, on which the grantors then lived. The consideration expressed in the deed was $2000. The real consideration of the deed was expressed in the condition of a mortgage of the farm, given by the trustee to his parents on the same day. The condition of the mortgage was that the trustee should well and truly support and maintain his parents during their lives and the life of the survivor of them at the house of the trustee on the farm; provide each of them with all suitable meats, drinks, food, clothing, beds and bedding, and all other things suitable and necessary for their comfort, and all proper and necessary care, attendance, nursing, medicine and medical attendance in sickness, and at their death provide them suitable burial.

The trustee disclosed that at the time of the conveyance of the farm he received personal property worth $200, under an agreement that he was to pay debts of the defendant to that amount, and that he paid debts to a greater amount; that he took possession of the farm at the time of the conveyance, and had ever since supported his parents according to the condition of the mortgage, and still continued to do so; that he had built buildings, cleared land, bought manure and put it upon the land, and in various ways made improvements on the farm from 1853 to the present time; that he had, during the same time, sold crops, cattle and butter from the farm, for which he had received various sums of money, and had received all the rents and profits; that during the same time the defendant had done some work on the farm.

The plaintiff's claim against the defendant is a judgment rendered in this State in 1858, in a suit upon a judgment rendered in 1851 by a justice of the peace in Vermont, in a suit upon a note signed by the defendant in 1840.

At the time of the conveyance the defendant had a life estate in the farm, as tenant by the courtesy.

The plaintiff claimed that the conveyance was void as to creditors, not because of any fraudulent intent in the parties, but because of the support secured by the condition of the mortgage.

Plaintiff claimed that the trustee should be charged for the value of the labor of defendant and wife, and for the balance of the rents and profits received from the farm, over and above the expenses of carrying it on, from the time when the trustee took possession, to the time of the trial, without any deduction on account of new buildings and permanent improvements made upon the place.

The court ruled *pro forma*, that if the trustee were chargeable at all, he would be chargeable only for the balance ·of profits in his hands at the time of the service of the writ upon him; that all his expenses in carrying on the farm and making improvements down to that time should be deducted from the amount received by him; that nothing would be deducted for permanent improvements made after that time; that he would not be chargeable for anything that came into his possession after his disclosure; and that in this case he was not chargeable for anything; to which ruling the plaintiff excepted.

The trustee stated in his disclosure, (Int. 23,) that in his opinion, the labor of his parents, since he went into possession of the farm, was not worth as much as the support that he furnished them; that he had offered to give the whole matter up to his sister and her husband, and give them $500, and throw in the debts he had paid for his father, if they would take his place.    (Int. 25.)  That his mother inherited the farm from her father; that it was set off to her by proceedings in the probate court. (Int. 26.)  That his father's interest in the farm had been sold many years before 1853, as he was informed and believed.    (Int. 30.)  That he understood from one Burnside that the cart and oxen were mortgaged to him.

The court ruled that these statements and other similar ones made on cross-examination in the disclosure, should not be read to the jury, and that the disclosure should not be given to the jury when they should retire to consider the case, to which rulings the trustee excepted.

The action was entered October, 1861, and the trustee was in attendance and ready to make his disclosure at the first term, and the plaintiff's attorney was notified of that fact at the time.    At the request of the plaintiff's attorney, and for his convenience, the trustee did not then disclose, and the case was continued.  . The disclosure was made in vacation in April, 1864.    The court ruled that in taxing the trustee's costs, he should allow an attorney's fee of $1, and for travel and attendance as a party from the time when the notice was given to the plaintiff's attorney, to the time when the plaintiff elected trial by jury, and had such election entered on the docket by order of court in the presence of trustee's counsel; and the court reserved the question whether this ruling was correct under the statute and Rule of Court 62.

The case was withdrawn from the jury.

*Heywood, Benton & Ray*, for plaintiff.

1. The conveyance of the interest in the farm by the principal defendant to the trustee, was a fraud in law. It was done to secure a benefit to the principal defendant in fraud of creditors, which the law does not permit. This is so held in *Smith* v. *Smith*, 11 N. H. 459 ; *Coolidge* v. *Melvin*, 42 N. H. 510.

2. We think that the case, *Pittsfield Bank* v. *Clough*, is authority to sustain the plaintiff in the position taken on the trial, to wit, "that the trustee should be charged for the balance of the rents and profits received from the farms over and above the expenses of carrying it on." 45 N. H. 178.

3. The ruling of the court that the trustee should be held "only for the balance of profits in his hands at the time of the service of the writ upon him," would seem to be contrary to the statute, ch. 221, sec. 8 ; Comp. Stat. 528.

4. The trustee process is an equitable proceeding, and it would seem to be inequitable that "permanent improvements" made upon the farm should be deducted from the rents and profits. The trustee owns the farm ; it is not proposed to interfere with his title to that. The permanent improvements, therefore, belong to him, and he should not have compensation for them out of the rents and profits.

5. The offer made by the trustee to his sister was not admissible ; neither were the other answers given in the disclosure, which were ruled out by the court. They were merely hearsay.

6. The trustee was entitled to costs of travel and attendance at October Term, 1861, if at all. But he did not attend court after that at any term before giving his disclosure. Hence, under a proper construction of rule 62, he was not entitled to costs, either as a party or witness, for the four terms intervening. But under sec. 33, ch. 222, Comp. Stat. p. 532, this trustee should *pay* costs, not receive them.

*Burns & Fletcher*, for trustee.

1. The principal defendant had no cause of action against the trustee at the time of the commencement of this suit, or since, consequently the plaintiff cannot hold the trustee. *Twitchell* v. *Chase & Tr.*, 37 N. H. 106 ; *Burnham* v. *Dunn*, 35 N. H. 556.

2. If the disclosure is evidence, as we contend, and that the interest of the debtor in the farm had been sold before the conveyance to the trustee, the plaintiff can have no remedy either upon the land or the trustee. *Burnham* v. *Dunn*, above cited ; *Plummer* v. *Ranlett*, 42 Me. 365.

3. It is not contended that there was any fraud, in fact, in the conveyance, indeed, it is conceded that there was none ; and this process being an equitable proceeding, the trustee cannot be charged. Comp. Stat. ch. 221, secs. 33, 35 ; *Stedman* v. *Vickney*, 42 Me. 132.

4. So far as the real estate is concerned, the trustee cannot be

charged under our statute. *Plummer* v. *Ranlett*, before cited; *Risley* v. *Wells*, 5 Conn. 431.

5. We contend that the trustee is not liable for any rents and profits whatever, as there was no fraud, and as he was merely carrying out his contract in good faith. The rents and profits, if any, were no credits of the debtor.

6. By the statute the trustee is to have costs up to the filing of the motion to try his liability by a jury, and the presiding justice has modified the taxation, and allowed no fees as a witness. He has exercised according to law and the rules of court, with the affidavits of the parties before him.

BARTLETT, J. It is immaterial here whether the conveyance from Eliza Brooks and her husband was fraudulent as to his creditors or not, for the plaintiff does not attempt to avoid that conveyance, and he cannot here, for the purpose of charging the trustee on account of the land, deny that the title passed to the trustee by it; *Pittsfield Bank* v. *Clough*, 43 N. H. 187; and the trustee cannot be charged for the land itself; *Wright* v. *Bosworth*, 7 N. H. 593; and there was no evidence of any trust for the principal defendant, except in the mere obligation of the trustee to support him and his wife, which the latter had fulfilled up to the time of the disclosure, so that, as against the principal defendant, and this plaintiff, a creditor who has not avoided the conveyance, the trustee had the right to retain to his own use the income he had received from the farm. *Jones* v. *Bryant*, 13 N. H. 53.

The trustee could not be charged by reason of the statement in his disclosure that he had received certain personal property from the principal defendant, for the same disclosure states that the trustee had, according to the arrangement under which he received it, paid debts of the principal defendant to an amount equal to its value, and, indeed, greater, and the statements of the disclosure are in no way controverted or impeached, and the actual good faith of this as well as of the other transactions is not questioned.

The disclosure states that, between 1853 and its date, the principal defendant "had done some work on the farm," without showing what, or under what circumstances or arrangement, or when with reference to the service of the process. Rev. Stat. ch. 208, sec. 9; Laws 1861, ch. 2538. As the principal defendant was the father of the trustee, and was then with his wife being supported by the trustee upon the farm, the rule, "that where the relation of parent and child is shown to exist, the law will not presume any other," applies, and to establish the relation of debtor and creditor between them at any given time, there must be evidence that the parties understood the latter relation to subsist between them at the time, and acted with reference to it; *Munger* v. *Munger*, 33 N. H. 583; *Dickinson* v. *Dickinson*, 43 N. H. 649; and no such evidence was offered. It does not appear that the wife of the principal defendant performed any labor for the trustee, and if she did, aside from the objection just stated in the case of her husband, the trustee could not under our statute be charged for it. Rev. Stat. ch.

208, sec. 9 ; Laws 1861, ch. 2358.   Upon this view of the case there was no evidence upon which the jury could have found the trustee chargeable, and it becomes unnecessary to examine the correctness of the ruling of the court in relation to the trustee's right of set-off in case he had been chargeable.

The opinion of the trustee as to the value of his parents' services, and his offer to his sister were incompetent evidence, and neither the proceedings of the probate court, the sale of the principal defendant's interest in the land, nor the mortgage of chattels could be proved by the mere statement of the disclosure, if objected to, and besides several of these matters were stated as mere hearsay ; that part of the disclosure was therefore properly excluded from the evidence, ( *Currier* v. *Taylor*, 19 N. H. 191,) and as part of the disclosure was rejected as incompetent.   Upon a familiar rule of practice, the document itself could not go to the jury.

By section 28 ch. 208 Rev. Stat., the trustee was entitled to his costs up to the filing of the motion for jury trial, "unless the court shall restrict the same," and by the sixty-second rule of court it is provided that trustees shall not be allowed costs of attendance till the plaintiff's attorney is notified that the trustee is in attendance and ready to disclose, &c., the costs allowed were proper to be allowed under these provisions, and under the statute the court had the power to restrict the costs of the trustee.   The facts stated do not bring the case within either section 33 or section 34 of ch. 208 of the Revised Statutes.   The case is to be discharged.